Bart K. Larsen, Esq.
Nevada Bar No. 8538
Kyle M. Wyant, Esq
Nevada Bar No. 14652
**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
Telephone: (702) 471-7432
Fax: (702) 926-9683
E-Mail: blarsen@shea.law
kwyant@shea.law

*Attorneys for HASelect-Medical Receivables Litigation Finance Fund International SP*

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

In re:

OLIVER ANDREAS HEMMERS; and ANNE PANTELAS;

Debtors.

HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL SP;

Plaintiff,

v.

ANNE PANTELAS; OLIVER HEMMERS; and INFINITY HEALTH SOLUTIONS LLC;

Defendants.

Case No: 23-15674-abl

Chapter 7

**Lead Case: Adversary Case No.: 24-01008-abl**

*Consolidated with Adversary Case No. 22-01109-abl*

**PLAINTIFF HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL SP'S TRIAL STATEMENT**

Plaintiff HASelect-Medical Receivables Litigation Finance Fund International SP ("HASelect"), by and through its undersigned counsel, hereby submits the HASelect's Pre-trial Statement, and in support thereof respectfully states as follows:

## I. NATURE OF THE CASE

Beginning in 2019 and in response to various solicitations from Defendant Oliver Hemmers ("Hemmers") and Defendant Anne Pantelas ("Pantelas"), HASelect made several advances under a

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

loan to Infinity Capital Management, Inc. ("Infinity"). Such advances were documented through various written loan agreements and promissory notes through which Infinity pledged all of its personal property to HASelect as collateral (the "Collateral"). In total, HASelect advanced over $15 million in loan funds pursuant to various draw requests signed and executed by Hemmers and Pantelas. In seeking such advances, Hemmers and Pantelas represented to HASelect that its loan proceeds would be used solely for the purchase of accounts receivable from medical providers. Further, such accounts receivable were to be secured by liens against such personal injury claims. Through the various draw requests they submitted to HASelect, Hemmers and Pantelas made several intentional and false representations on which HASelect reasonably relied in advancing loan funds to Infinity. In fact, HASelect asserts that less than $9 million of the $15 million in loan funds it advanced was actually used to purchase accounts receivable as represented by Hemmers and Pantelas. HASelect further asserts that Hemmers and Pantelas intentionally inflated both the cost and the value of the accounts receivable purchased by Infinity so that they could obtain excess loan proceeds that they used for impermissible purposes, including paying unsecured debts owed by Infinity to other entities in which Hemmers and Pantelas had an interest in, paying themselves bonuses as employees of Infinity, causing Infinity to loan funds to them that were never repaid, and using such funds to assist competitors in the market. One such competitor was Tecumseh-Infinity Medical Receivables Fund, LP ("Tecumseh"), which this Court is already aware of by a previous trial that concluded in 2023.

Further, via Infinity's bankruptcy case, various orders were entered by the bankruptcy court which permitted HASelect to immediately take possession of any Collateral, wherever it may be located and to otherwise enforce its security interest in the same, as well as requiring all persons (including Hemmers and Pantelas) to turn over the same to HASelect. HASelect asserts that Hemmers and Pantelas failed to do so, and instead used HASelect's Collateral to impermissibly continue Infinity's business through Defendant Infinity Health Solutions LLC ("IHS" and collectively with Hemmers and Pantelas, "Defendants"). HASelect seeks turnover of any such Collateral that remains in the hands of Defendants.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

Lastly, as a result of Defendants' failure to turnover HASelect's Collateral, as well as Hemmers and Pantelas' misrepresentations on their filed bankruptcy schedules and statement of financial affairs, as well as previous false statements under oath and intentional misrepresentations to HASelct in obtaining approximately $15 million in loaned funds, HASelect seeks denial of a discharge to Hemmers and Pantelas under either 11 U.S.C. § 523(a) or § 727.

**II. BASIS FOR JURISDICTION, WHETHER THE CASE IS CORE OR NON-CORE, AND WHETHER THE BANKRUPTCY JUDGE MAY ENTER FINAL ORDERS OR JUDGMENT**

The foregoing consolidated matter contains claims brought pursuant to Bankruptcy Rule 7001 seeking an order, judgment or decree from the Court to recover money and property that is the collateral of HASelect. This Court has jurisdiction over these consolidated Adversary Proceedings pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. §§ 105 and 506. This is a core proceeding pursuant to 28 U.S.C. § 157. Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

The foregoing consolidated matter also involves an Adversary Complaint for nondischargeability, and the claims herein, are brought pursuant to 28 U.S.C. § 1334(b) and (d), in that it arises in or is related to the above-captioned case under Chapter 7, title 11, of the United States Code. This is a core proceeding pursuant to 28 U.S.C. § 157 because it seeks, among other things, a determination of nondischargeability of particular debts within the meaning of § 157(b)(2)(I) and objects to discharge within the meaning of § 157(b)(2)(J).

HASelect consents and agrees that the Bankruptcy Court may enter a final order with respect to HASelect's claims in these consolidated Adversary Proceedings.

**III. CONTENTIONS OF HASELECT**

1. HASelect holds a perfected security interest in the Collateral (as defined herein and at trial).

2. Defendants are in possession of HASelect's Collateral and must cease and refrain from utilizing the same, in connection with, but not limited to, Defendant IHS's business, and must immediately surrender all Collateral in Defendants' possession in accordance with applicable

orders.

3. Defendant IHS is merely a continuation of Infinity Capital Management, Inc. ("Infinity")—Defendant Hemmers and Defendant Pantelas' other owned business that previously filed for bankruptcy.

4. Defendant Pantelas is in breach of an agreement between Pantelas and Infinity regarding repayment of a Shareholder Loan (as defined herein and at trial) and HASelect, as a result of various applicable orders entered by the above-captioned court, succeeded in Infinity's rights to repayment of the Shareholder Loan.

5. Defendants Hemmers and Pantelas made intentional false representations in their capacities as individuals and as agents of Infinity concerning Infinity's use of loan proceeds received from HASelect as well as the cost and value of accounts receivable pledged as collateral under the Loan Agreement (as defined herein and at trial).

6. Defendant Hemmers and Pantelas failed to accurately identify assets and liabilities in their Bankruptcy Schedules of Assets and Liabilities and Statement of Financial Affairs filed December 22, 2023 [ECF No. 1] (the "Schedules").

7. Defendants Hemmers and Pantelas are not entitled to a discharge of debts associated with HASelect under 11 U.S.C. § 523(a) or otherwise under 11 U.S.C. § 727(a).

**IV. STIPULATED FACTS**

Despite conferring regarding the same, counsel for HASelect on the one hand and counsel for Defendants on the other have been unable to agree to a set of stipulated facts at this time. Based on such discussions, HASelect is informed and believes that the parties will file a joint set of stipulated facts at a later date to supplement each parties' respective pretrial statement. HASelect's set of facts that it intends to establish at trial in this matter are set forth below:

1. At all relevant times up to the chapter 7 bankruptcy filing of Infinity Capital Management, Inc. ("Infinity") on September 14, 2021, Defendants were the sole owners, officers, and directors of Infinity.

2. Prior to its chapter 7 bankruptcy filing, Infinity operated a business in which it

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

purchased accounts receivable ("Receivables") from medical providers at a discount with the general expectation that Infinity would receive more than the purchase price at the time of collection.

3. Such Receivables generally arose from medical treatment provided to individuals who were injured in accidents and had asserted personal injury claims. These Receivables were generally secured by liens against such personal injury claims and were typically paid at the time the personal injury claims were settled.

4. Starting in late 2018, Defendants solicited HASelect to loan several million dollars to Infinity to be used by Infinity for the purchase of accounts receivable and offered to grant HASelect a first-priority security interest in substantially all of Infinity's assets, including its accounts receivable, to secure such loan.

5. As a result of Defendants' solicitations and after several months of discussions and negotiations, HASelect agreed to make a loan to Infinity (the "Loan").

6. On or about February 26, 2019, HASelect, which was then doing business under the name HASelect-FTM Medical Receivables Litigation Finance Fund SP, and Infinity entered into a Loan and Security Agreement and Promissory Note (the "Loan Agreement") pursuant to which HASelect agreed to loan up to $5,000,000 to Infinity to be used by Infinity for the purchase of Receivables.

7. In the Loan Agreement, Infinity granted HASelect a security interest in all of Infinity's existing and after acquired personal property (as defined in § 4.1 of the Loan Agreement, the "Collateral") to secure payment of all indebtedness owed in connection with the HASelect Loan. HASelect perfected this security interest through the filing of a UCC-1 with the Nevada Secretary of State on February 19, 2019.

8. On or about June 23, 2019, HASelect and Infinity entered into an Amendment 1 to Loan and Security Agreement and Promissory Note by which they agreed to increase the amount of the HASelect Loan by $1,000,000.

9. On or about August 30, 2019, HASelect and Infinity entered into a First Amended & Restated Loan Agreement and Promissory Note, which superseded all prior written loan agreements

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

and promissory notes entered into between HASelect and Infinity, by which they agreed, among other things, to increase the amount of the HASelect Loan to $15,000,000.

10. On or about December 18, 2019, HASelect and Infinity entered into a Second Amended & Restated Loan Agreement and Promissory Note (together, with all prior and related loan documents, the "Loan Agreement"), which again superseded all prior written loan agreements and promissory notes entered into between HASelect and Infinity, by which they agreed, among other things, to increase the amount of the HASelect Loan to $30 million.

11. In entering into the Loan Agreement and requesting funds thereunder, Infinity agreed to use the proceeds of the loans it obtained from HASelect to purchase accounts receivable from medical providers.

12. Beginning on March 4, 2019 and continuing through April 30, 2020, HASelect disbursed proceeds of the HASelect Loan to Infinity through periodic draws requested by Infinity that were subject to verification and approval by FTM. HASelect funded twenty-one (21) such draw requests on the dates and in the amounts set forth below.

| Draw Request | Date Funded | Funded Amount |
|---|---:|---:|
| HAS-01 | 3/4/2019 | $250,000.00 |
| HAS-02 | 4/2/2019 | $500,000.00 |
| HAS-02 | 4/3/2019 | $250,000.00 |
| HAS-03 | 5/1/2019 | $485,500.00 |
| HAS-04 | 5/20/2019 | $547,000.00 |
| HAS-05 | 6/19/2019 | $662,500.00 |
| HAS-06 | 7/24/2019 | $421,000.00 |
| HAS-07 | 6/28/2019 | $750,000.00 |
| HAS-08 | 7/15/2019 | $1,621,500.00 |
| HAS-09 | 8/26/2019 | $901,500.00 |
| HAS-10 | 9/30/2019 | $676,500.00 |
| HAS-11 | 10/31/2019 | $178,500.00 |
| HAS-12 | 10/22/2019 | $704,000.00 |
| HAS-13 | 11/15/2019 | $50,000.00 |
| HAS-14 | 12/13/2019 | $510,000.00 |
| HAS-15 | 11/12/2019 | $159,000.00 |

| | | |
|---|---|---|
| HAS-16 | 11/29/2019 | $249,000.00 |
| HAS-18 | 12/30/2019 | $3,200,000.00 |
| HAS-19 | 1/30/2020 | $1,223,000.00 |
| HAS-20 | 2/28/2020 | $303,000.00 |
| HAS-21 | 3/30/2020 | $989,000.00 |
| HAS-22 | 4/30/2020 | $465,000.00 |
| | | $15,096,000.00 |

13. To obtain a draw under the Loan, Infinity was required to submit a written draw request signed by one of the Defendants along with a list of the Receivables that Infinity was to acquire with the proceeds of the draw.

14. March 4, 2019 and continuing through April 30, 2020, Infinity submitted at least 21 separate draw requests to HASelect in which it sought the disbursement of Loan proceeds in the amounts set forth above.

15. Each such draw request was signed by either Hemmers or Pantelas as officers of Infinity.

16. Each such draw request expressly represented to HASelect that the purpose of the draw request was to obtain Loan proceeds that Infinity would use to purchase Receivables.

17. Each such draw request sought the disbursement of Loan proceeds in an amount that matched the purported cost of the Receivables identified in corresponding lists of Receivables submitted to HASelect with the draw requests.

18. Each such draw request also expressly represented that Infinity had satisfied all conditions necessary for a disbursement to be made under the Loan Agreement, which included the requirement that the value of the Receivables to be acquired with the Loan proceeds be at least 200% of the amount disbursed to Infinity.

19. HASelect relied upon such representations as set forth in each of Infinity's draw requests, as executed by Hemmers and Pantelas, in disbursing Loan proceeds to Infinity.

20. The Infinity draw requests signed by Hemmers and Pantelas routinely and intentionally overstated both the cost and the value of Receivables in order to fraudulently obtain excess Loan proceeds to use for purposes other than the acquisition of Receivables.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

21. For example, Infinity submitted draw request HAS-18 signed by Pantelas to HASelect in December 2019 in which it requested that HASelect disburse Loan proceeds in the amount of $3,200,000 to be used by Infinity to purchase Receivables from HealthPlus Imaging ("HealthPlus").

22. The HAS-18 draw request was accompanied by a list of the Receivables to be acquired that represented that the Receivables would be purchased at a total cost of $3,200,051.89 and that the Receivables held a collective value of $11,690,968.46.

23. Hemmers and Pantelas did not disclose to HASelect that the actual purchase price for these Receivables, as agreed to in writing between Infinity and HealthPlus, was $2,500,000, not $3,200,051.89 as represented in the HAS-18 draw request signed by Pantelas.

24. Additionally, Pantelas had previously been advised by Infinity staff by email in October 2019 that the total value of the Receivables to be purchased from HealthPlus was less than $5,000,000, not $11,690,968.46 as represented in the HAS-18 draw request signed by Pantelas and not 200% of the amount of Loan proceeds requested by Infinity as represented by Pantelas as required under the Loan Agreement.

25. Upon receipt of the full $3,200,000 requested under the HAS-18 draw request, Hemmers and Pantelas caused Infinity to pay only $1,750,000 of the $2,500,000 purchase price to HealthPlus and used the remaining Loan proceeds disbursed by HASelect to pay bonuses to themselves, to pay personal living expenses, and to pay indebtedness owed to creditors other than HASelect in violation of the Loan Agreement.

26. As another example, Infinity submitted draw request HAS-22 signed by Hemmers to HASelect on or about April 27, 2020 in which it requested that HASelect disburse Loan proceeds in the amount of $465,000 to be used by Infinity to purchase Receivables from various medical providers, including dozens of Receivables to be purchased from Cuevas Diagnostics, LLC d/b/a Stat Diagnostics ("Stat Diagnostics").

27. Under Infinity's written contract with Stat Diagnostics, Infinity paid Stat Diagnostics $600 for each Receivable arising from a magnetic resonance imaging ("MRI") scan performed by

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

Stat Diagnostics and received a refund of that payment along with an additional fee at the time of collection of the Receivable that varied based on how much time passed prior to collection. At most, Infinity was entitled to receive a refund of its $600 payment and a maximum fee of $480, for a total of $1,080, for each such Receivable.

28. The list of Receivables that Infinity submitted to HASelect in support of draw request HAS-22 represented the cost of each Receivable acquired from Stat Diagnostics to be $840, not the $600 purchase price actually paid by Infinity. Additionally, this list of Receivables represented the value of each Receivable acquired from Stat Diagnostics to be as much as $4,500, not the maximum amount of $1,080 that Infinity was actually entitled to collect under its contract with Stat Diagnostics. The cost and value of the remaining Receivables included in draw request HAS-22 were similarly overstated.

29. Of the total $15,096,000 in total Loan proceeds disbursed to Infinity based on draw requests signed by Hemmers and Pantelas, less than $9,000,000 was actually used by Infinity to purchase Receivables as represented to HASelect.

30. Hemmers and Pantelas caused Infinity to use the excess Loan proceeds advanced by HASelect to pay bonuses and make loans to Hemmers and Pantelas and to pay personal living expenses instead of using such proceeds to pay for the purchase of Receivables as represented to HASelect in the various draw requests signed by Hemmers and Pantelas.

31. Hemmers and Pantelas, contrary to their representations to HASelect, misappropriated more than $3,000,000 in Loan proceeds advanced to Infinity by HASelect to pay debts purportedly owed by Infinity to Coastal Investments, PLC ("Coastal"), which is a Cook Islands limited company. Hemmers and Pantelas were the majority owners of Coastal at the time such payments were received by Coastal and, thus, personally benefited from such payments.

32. In or around June 2020, Hemmers and Pantelas caused Infinity to terminate its borrowing relationship with HASelect in favor of a new funding relationship with Tecumseh-Infinity Medical Receivables Fund, LP ("Tecumseh").

33. Beginning on June 26, 2020 and continuing through at least October 4, 2020,

Hemmers and Pantelas caused Infinity to enter into at least seven (7) different assignments and bills of sale with Tecumseh by which Infinity sold to Tecumseh over 2,400 Receivables in which HASelect held a perfected, first-priority security interest as Collateral for the Loan.

34. Infinity received over $1,200,000 from Tecumseh for the sale of such Receivables to Tecumseh but did remit any portion of these sales proceeds to HASelect in payment of the Loan.

35. In selling such Receivables to Tecumseh, Hemmers and Pantelas intentionally caused Infinity to materially breach the Loan Agreement.

36. Pursuant to the Loan Agreement, Infinity was required to deposit all proceeds collected on Receivables to a dedicated deposit account at First Savings Bank (the "FSB Account") over which HASelect held control of disbursements and from which payments due under the Loan Agreement were remitted to HASelect.

37. All such proceeds were included within the Collateral and were subject to HASelect's perfected security interest under the Loan Agreement.

38. In or around July 2021, Hemmers and Pantelas intentionally caused Infinity to cease deposits of proceeds collected on Receivables to the FSB Account and to, instead, deposit such proceeds in one or more separate Infinity deposit accounts at Nevada State Bank (the "NSB Accounts").

39. Hemmers and Pantelas intentionally caused Infinity to divert $100,000 or more in proceeds collected from Receivables in which HASelect held a perfected security interest to the NSB Accounts in violation of the Loan Agreement during July, August, and September 2021.

40. Hemmers and Pantelas intentionally caused Infinity to use such diverted proceeds to pay personal expenses and to pay other amounts to Hemmers and Pantelas instead of remitting payment to HASelect as required under the Loan Agreement.

41. As a result of Hemmers and Pantelas' intentional misappropriation of HASelect's Collateral for the Loan, the value of the Collateral available to HASelect upon Infinity's chapter 7 bankruptcy filing was significantly less than represented to HASelect by Hemmers and Pantelas and less than the indebtedness owed to HASelect in connection with the Loan.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

42. On September 14, 2021 (the "Petition Date"), Infinity filed a voluntary Chapter 7 bankruptcy petition with this Court, commencing Bankruptcy Case No. 21-14486-abl (the "Bankruptcy Case").

43. On October 15, 2021, the Bankruptcy Court entered an Order in the Bankruptcy Case [ECF No. 96] granting HASelect's Motion for Relief from the Automatic Stay [ECF No. 17] permitting HASelect to immediately take possession and control of the Collateral, wherever it may be located, and to otherwise enforce its security interest and rights in the Collateral consistent with its rights under the Loan Agreement and applicable law (the "Relief Order").

44. The only items excluded by way of the Relief Order were (i) information believed to be in Infinity's possession as of the Petition Date relating to certain accounts receivables owned by HealthPlus Imaging of Texas, LLC ("HealthPlus Imaging") that had been offered for sale to Infinity and (ii) certain accounts receivable over which Tecumseh – Infinity Medical Receivable Fund, LP's ("Tecumseh") claimed ownership.

45. The Relief Order specifically required Infinity and its officers, directors, and agents assist HASelect in locating and taking possession of the Collateral and directed them to turn over the Collateral to HASelect.

46. On October 15, 2021, the Bankruptcy Court also entered an Order in the Bankruptcy Case [ECF No. 97] granting HASelect and the Chapter 7 Trustee's Joint Motion to Approve Abandonment of the Collateral to HASelect [ECF No. 12], requiring Infinity and its officers, directors, and agents to promptly deliver or make available to HASelect any and all Collateral that remains in their possession or control, including all copies of physical documents and electronically stored information constituting Collateral, as well as future Collateral (the "Abandonment Order"). The Abandonment Order contains the same exclusions as the Relief Order.

47. The Relief Order and the Abandonment Order require that anyone in possession of any of the Collateral turn over the same to HASelect, including any Collateral in the possession of Infinity's officers, directors, and agents.

48. The Relief Order and the Abandonment Order additionally provide HASelect the

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

right to receive payment relating to the Collateral.

49. In entering the Relief Order and the Abandonment Order, the Bankruptcy Court retained jurisdiction to interpret and enforce the provisions of such Orders.

50. As defined in the Loan Agreement, Collateral includes all rights to payment held by Infinity, which includes all outstanding loans made by Infinity to third parties.

51. At all relevant times prior to Infinity's chapter 7 bankruptcy filing, Hemmers and Pantelas were the sole officers and directors of Infinity.

52. As officers and directors of Infinity, Hemmers and Pantelas owed fiduciary duties to Infinity.

53. On or about September 2, 2020, Hemmers and Pantelas formed Defendant IHS as a Nevada limited liability company.

54. Hemmers and Pantelas were, at all relevant times, the sole managers of IHS and collectively own 100% of the membership interests in IHS.

55. IHS did not engage in any material business transaction with any third party prior to the filing of Infinity's chapter 7 bankruptcy case.

56. Shortly before the filing of Infinity's chapter 7 bankruptcy case, Hemmers and Pantelas copied and transferred to IHS substantially all of Infinity's electronic business records, including records relating to Infinity's accounts receivable, Infinity's contracts with third parties, Infinity's employees, Infinity's software and computer systems, Infinity's websites and data portals, and Infinity's business operations among other things.

57. On September 2, 2021, Infinity employee Robert Land sent an email to Hemmers with the subject line "Cloud Migration Update" in which he advised Hemmers that he had copied Infinity's electronic records to a new server, was able to run Infinity's proprietary case manager software on the new server and had attempted to install Infinity's websites on the new server but was unable to do so.

58. On September 10, 2021, Infinity employee Robert Land sent an email to Hemmers with the subject line "RX Portal on Solutions is working" in which he advised Hemmers that

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

Infinity's websites and customer portals were functional through IHS's new website www.infinityhealth.solutions and that he had not yet made "the changes we discussed yesterday [to] the company and domain name."

59. One day before the filing of Infinity's chapter 7 bankruptcy case, Infinity employee Robert Land sent an email to Hemmers with the subject line "Name Replacements" in which advised that he was updating Infinity's electronic records to add IHS's name in place of Infinity. Specifically, Land advised "'Infinity Health' will be changed to 'Infinity Health Solutions'" and "'Infinity Capital' will be changed to 'Infinity Health Solutions'". Hemmers responded to this email within a few minutes instructing Land to also change "the old name Infinity Health Connections" to "Infinity Health Solutions".

60. On the day of Infinity's chapter 7 bankruptcy filing, Infinity employee Robert Land sent an email to Hemmers with the subject line "Move Status" in which he discussed the status of his efforts to copy and transfer Infinity's electronic records to IHS. Among other things, Land represented that Infinity's "[d]atabase has been copied and set up", the "Infinity Health folder has been copied from [Infinity's server]", and "PI and RX Portals with FileManager are working (infinityhealth.com changed to infinityhealth.solutions where appropriate)".

61. All Infinity records copied and transferred to IHS are included within and remain part of HASelect's Collateral and are subject to HASelect's perfected security interest under the Loan Agreement.

62. On or about the day of Infinity's chapter 7 bankruptcy filing, Hemmers and Pantelas caused certain equipment owned by Infinity and included within the Collateral, including laptop computers, iPads, hard drives, and telephone equipment, to be moved from Infinity's business office to their personal residence for use by IHS.

63. On or about the day of Infinity's chapter 7 bankruptcy filing, Hemmers and Pantelas caused other personal property owned by Infinity and included within the Collateral, including software, websites, data portals, and other general intangibles, to be transferred to IHS for use in usurping Infinity's business operations.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

64. On or about the day of Infinity's chapter 7 bankruptcy filing, Hemmers and Pantelas caused IHS to hire substantially all of the employees of Infinity in substantially the same roles and positions in which they served while employed by Infinity.

65. Approximately a week after Infinity's chapter 7 bankruptcy filing, Hemmers emailed an "updated company roster" to several former employees of Infinity in which those employees were identified as employees of IHS. This "updated company roster" also included contact information for Infinity's prior lawyer and accountant as well as contact information for individuals associated with several companies that had previously done business with Infinity, including Tecumseh.

66. On or about the day of Infinity's chapter 7 bankruptcy filing, Hemmers and Pantelas caused all new incoming emails sent to emails address used in connection with Infinity's business operations, including various email addresses ending in @infinitycapital.com and @infinityhealth.com, to be automatically forwarded to similar email addresses ending in @infinityhealth.solutions to be used in connection with IHS's business operations.

67. On October 6, 2021, Hemmers sent an email to Infinity employee Robert Land with the subject line "Corrections to Statement" in which Hemmers asked Land to update the form billing statement used by Infinity to replace Infinity's name and contact information with IHS's name and contact information. Hemmers attached to this email an Infinity billing statement on which he had crossed out Infinity's name and contact information and handwritten IHS's name and contact information.

68. On October 8, 2021, Infinity employee Robert Land sent an email to Hemmers with the subject line "Modified Template Files" in which he advised that he had modified more than 20 document templates previously used by Infinity to include the new logo, address, and phone numbers for IHS.

69. On or about the day of Infinity's chapter 7 bankruptcy filing, Hemmers and Pantelas caused numerous vendor accounts used by Infinity to be transferred to IHS, including vendor accounts established with AdvanStaffHR, Adobe, GoDaddy, Equiinet, Slack, Tailormade Servers, and others.

70. On or about the day of Infinity's chapter 7 bankruptcy filing, Hemmers and Pantelas and other IHS employees began contacting third parties that had previously done business with Infinity to request that those third parties enter into new contracts with IHS.

71. On or about the day of Infinity's chapter 7 bankruptcy filing, Hemmers and Pantelas caused IHS to begin entering into new written contracts with third parties that had previously entered into written contracts with Infinity, including new contracts with Peachtree Orthopedic, Perimeter Orthopedics, ColdCo Therapies, ExpressCHEX, Georgia Spine and Orthopedics, Paid Care Center of Georgia, and others. The contracts entered into by IHS with such third parties are substantially similar to the contracts previously entered into between such third parties and Infinity.

72. Following Infinity's chapter 7 bankruptcy filing, Hemmers and Pantelas continued to communicate with and accept payment from various third parties responsible for payment of accounts receivable included in HASelect's Collateral in interference of HASelect's rights and its efforts to service and collect such accounts receivable.

73. From approximately June 2020 through the Petition Date, Infinity sold a substantial number of accounts receivable to Tecumseh for which Infinity provided collection services following the sale.

74. Following Infinity's chapter 7 bankruptcy filing, Hemmers and Pantelas used IHS to continue providing substantially the same collection services as previously provided by Infinity to Tecumseh.

75. As part of such collection services, Hemmers and Pantelas exchanged emails with Tecumseh regarding the status of accounts receivable as well as numerous emails with third parties regarding the acceptance of discounted payments in satisfaction of accounts receivable Infinity sold to Tecumseh.

76. Following Infinity's chapter 7 bankruptcy filing, Hemmers and Pantelas used IHS to continue selling accounts receivable to Tecumseh as evidenced by a payment from Tecumseh to IHS on October 12, 2021 in the amount of $56,590.89.

77. Prior to Infinity's chapter 7 bankruptcy filing, Infinity operated a pharmacy card

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

program through its website pursuant to a contract it had entered into with ExpressCHEX, LLC through which Infinity originated and purchased accounts receivable relating to purchases of prescription medication.

78. Shortly after the Petition Date, Hemmers and Pantelas caused IHS to enter into a substantially similar contract with ExpressCHEX, LLC and to begin operating the same pharmacy card program developed by Infinity through IHS's website.

79. Following Infinity's chapter 7 bankruptcy filing, Hemmers and Pantelas added IHS's name, logo, and contact information to marketing materials developed by Infinity and used such materials, as modified, to solicit business for IHS.

80. Infinity, prior to the Petition Date, regularly made loans to Pantelas in her individual capacity as a shareholder of Infinity the ("Shareholder Loans") before Infinity ceased business operations on or about the Petition Date.

81. Pantelas was indebted to Infinity as of the Petition Date in the amount of as much as $380,000 relating to the Shareholder Loans.

82. By virtue of the Relief Order and Abandonment Order, HASelect is entitled to collect the outstanding balance of the Shareholder Loans from Pantelas.

83. Hemmers and Pantelas made several false statements while testifying under oath at Infinity's § 341 meeting of creditors on October 27, 2021.

84. For example, when asked if IHS had entered into any contract with any party, Hemmers and Pantelas both answered "no". In fact, as of October 27, 2021, IHS had already entered into several contracts (all signed by Pantelas as manager of IHS) with parties that had previously done business with Infinity, including a contract with Peachtree Orthopedic Clinic, P.A. dated October 1, 2021, a contract with ExpressCHEX, LLC dated October 6, 2021, a contract with Georgia Spine and Orthopedics dated October 11, 2021, and several others.

85. Similarly, when asked if they had any connection to a company named Buena Vista (a fictitious firm named used by ExpressCHEX, LLC in its dealings with Infinity), both Hemmers and Pantelas answered "no" with the exception of Infinity's pre-petition relationship with Buena

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

Vista. Hemmers and Pantelas failed to disclose that IHS had entered into a new contract with ExpressCHEX, LLC (again doing business as Buena Vista Medical Services) on October 6, 2021 and had purchased accounts receivable from ExpressCHEX, LLC after the Petition Date.

86. When asked if they were involved in or had any connection to any "medical lien business" other than Infinity, both Hemmers and Pantelas answered "no". In fact, as of October 27, 2021, IHS had entered into several contracts with medical providers relating to the purchase of accounts receivable secured by liens against personal injury claims, had sold a substantial number of such accounts receivable to Tecumseh, and had provided collection services to Tecumseh with respect to accounts receivable sold to Tecumseh by Infinity.

87. When asked if IHS used any of the same software systems that were used by Infinity, Hemmers answered "no". In fact, as of October 27, 2021, IHS was using the same proprietary case manager software, websites, and customer portals that had been developed and used by Infinity.

88. When asked if IHS was in possession of any electronic records relating to Infinity, Hemmers and Pantelas testified that the only such records in IHS's possession were "backups" stored on a single hard drive that was removed from Infinity's office around the Petition Date and had not been connected to any computer system used by IHS. In fact, as of October 27, 2021, substantially all of the electronic records stored on Infinity's data servers had been copied to new servers set up by Hemmers and Pantelas for use by IHS.

89. When asked if they were involved in the management of any portfolio of accounts receivable, both Hemmers and Pantelas testified they were not. In fact, as of October 27, 2021, IHS was providing collection services, including negotiating discounted payment amounts, relating to accounts receivable Infinity had sold to Tecumseh.

90. When asked if IHS's employees were communicating with parties that had previously done business with Infinity, both Hemmers and Pantelas answered "no". In fact, as of October 27, 2021, IHS's employees, including Hemmers and Pantelas, were actively communicating with several parties that had previously done business with Infinity.

91. As a result of Hemmers and Pantelas' breaches of their fiduciary duties owed to

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

Infinity as well as their misappropriation and embezzlement of Infinity Assets as described herein, the value of the Collateral available to HASelect upon Infinity's chapter 7 bankruptcy filing was significantly less than represented to HASelect by Hemmers and Pantelas and less than the indebtedness owed to HASelect in connection with the Loan.

92. Defendants, each of them, knowingly and fraudulently made numerous materially false representations in connection with their filing of this bankruptcy case including, without implied limitation, with respect to the Schedules of Assets and Liabilities and Statement of Financial Affairs filed December 22, 2023 (the "Schedules") [ECF No. 1]. Among other things, those materially false representations include the following false statements and omissions.

a. At item 7 on page 16 of 69 of the Schedules, Defendants state they hold no interest in any electronics, including televisions, radios, computers, printers, scanners, cell phones, cameras, media players, games, and other electronic devices. HASelect is informed and believes that this statement is false.

b. At item 9 on page 16 of 69 of the Schedules, Defendants state they hold no interest in any equipment for sports or hobbies, including any photographic equipment, exercise equipment, bicycles, tools, musical instruments, or other hobby equipment. HASelect is informed and believes that this statement is false.

c. At item 12 on page 16 of 69 of the Schedules, Defendants state they hold no interest in any jewelry of any kind. HASelect is informed and believes that this statement is false.

d. At item 19 on page 16 of 69, Defendants state they hold no interest in any non-publicly traded business, including any interest in any LLC, partnership or joint venture. HASelect is informed and believes that this statement is false.

e. At item 26 on page 18 of 69 of the Schedules, Defendants state they own no interest in any patent, copyright, trademark, trade secret, or other intellectual property. HASelect is informed and believes that this statement is false.

f. At item 43 on page 20 of 69 of the Schedules, Defendants state they hold no interest

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

in any customer list, mailing list, or other compilation. HASelect is informed and believes that this statement is false.

g. At item 18 on page 58 of 69 of the Schedules, Defendants state they have not sold, traded, or otherwise transferred any property other than in the ordinary course of their financial affairs within two (2) years prior to the filing of their chapter 7 bankruptcy petition. HASelect is informed and believes that this statement is false.

h. At item 27 of page 60 of 69 of the Schedules, Defendants identify various business entities in which they have held an ownership interest or to which they have been connected in the four (4) years prior to the filing of their chapter 7 bankruptcy petition. Defendants' response to this item falsely states that IHS has filed a chapter 7 bankruptcy case. Defendants' response further omits Defendants' interests in and connections to Coastal as well as A & J Organic Bakery LLC.

## V. CONTESTED ISSUES OF LAW

1. Is Pantelas liable for repayment of the Shareholder Loan, and if so, is that to be paid to HASelect as a result of the Abandonment Order and Relief Order?

2. Are Defendants improperly in possession of and utilizing HASelect's Collateral?

3. Did Hemmers and Pantelas make false representations to HASelect in soliciting HASelect to make a loan to Infinity or to obtain loan funds from HASelect through periodic draw requests?

4. Should Hemmers and Pantelas, or either of them, be denied a discharge pursuant to 11 U.S.C. § 523(a)(2)(A) based on their conduct in seeking and obtaining loan proceeds from HASelect through false pretenses, false representations, or actual fraud?

5. Should Hemmers and Pantelas, or either of them, be denied a discharge pursuant to 11 U.S.C. § 523(a)(2)(B) based on their conduct in seeking and obtaining loan proceeds from HASelect through false written statements on which HASelect relied in loaning funds to Infinity?

6. Should Hemmers and Pantelas, or either of them, be denied a discharge pursuant to 11 U.S.C. § 523(a)(4) based on their conduct in breaching their fiduciary duties owed as officers

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

of Infinity by, among other things, causing Infinity to incur excessive debt through their fraudulent representations made to HASelect as described herein, causing Infinity to use Loan proceeds for purposes other than acquiring Receivables as required under the Loan Agreement, causing Infinity to wrongfully misappropriate and dispose of HASelect's Collateral, misappropriating and embezzling Infinity assets for their own personal use, leaving Infinity with insufficient assets to repay its creditors, and attempting to transfer Infinity's business operations to IHS immediately upon Infinity's chapter 7 bankruptcy filing.

7. Should Hemmers and Pantelas, or either of them, be denied a discharge pursuant to 11 U.S.C. § 523(a)(6) based on their conduct in willfully and maliciously causing injury to HASelect by altering HASelect's Collateral, knowingly attempting to give the same to third parties, refusing to provide HASelect with accurate information regarding the value of its Collateral, intentionally misrepresenting the value of HASelect's Collateral, and knowingly transferring HASelect's Collateral to third parties in an attempt to avoid payment of HASelect's loans in full?

8. Should Hemmers and Pantelas, or either of them, be denied a discharge pursuant to 11 U.S.C. §§ 727(a)(2) and 727(a)(4)(A) based on their conduct in knowingly and fraudulently making numerous materially false representations in connection with their filing of this bankruptcy case including, without implied limitation, with respect to their Schedules?

## VI. EXHIBIT LOG

*See* Exhibit Log attached hereto as Exhibit 1. HASelect reserves the right to utilize any exhibits separately identified by Defendants in this matter or that Defendants may introduce at trial.

## VII. ANY SPECIAL TRIAL ISSUES

N/A

## VIII. LIST OF WITNESSES

1. Designated witness for HASelect (Michael Griffin)
c/o Shea Larsen PC
1731 Village Center Circle, Suite 150

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

Las Vegas, Nevada 89134

2. Anne Pantelas
c/o Larry C. Oldham, P.C.
416 Pirkle Ferry Road, Suite K-500
Cumming, Georgia 30040

3. Oliver Hemmers
c/o Larry C. Oldham, P.C.
416 Pirkle Ferry Road, Suite K-500
Cumming, Georgia 30040

4. Debbie Griffin
c/o Shea Larsen PC
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134

5. Designated witness for Tecumseh-Infinity Medical Receivables Fund, LP
5668 Morris Hunt Drive
Fort Mill, South Carolina 29708

HASelect reserves the right to utilize or call any witness identified by Defendants in this matter.

DATED this 23rd day of September 2024.

**SHEA LARSEN**

/s/ *Bart K. Larsen, Esq.*
Bart K. Larsen, Esq.
Nevada Bar No. 8538
Kyle M. Wyant, Esq.
Nevada Bar No. 14652
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134

*Attorneys for HASelect-Medical Receivables Litigation Finance Fund International SP*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 23, 2024, I electronically transmitted the foregoing **PLAINTIFF HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL SP'S TRIAL STATEMENT** to the Office of the Clerk of the United States Bankruptcy Court, District of Nevada, using the CM/ECF System, for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants listed for this matter.

By: /s/ *Bart K. Larsen, Esq.*

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

# **EXHIBIT 1**

**HEARING DATE : August 24, 25, 28, 29, and 31, 2023**
**JUDGE:** August B. Landis

| **EXHIBITS** | | **In re Infinity Capital Management, Inc.**<br>**HASelect v. Infinity Health Solutions, et al.**<br><br>**In re Oliver Andreas Hemmers, et al.**<br>**HASelect v. Hemmers, et al.** | | | **BK: Case No. 21-14486-abl**<br>**ADV: Case No. 22-01109-abl**<br><br>**BK Case No. 23-15674-abl**<br>**ADV: Case No. 24-01008-abl** | |
|---|---|---|---|---|---|---|
| Offered | Admitted | Identification | | Description of Exhibit | Offers Objections Rulings Exception | Notes |
| | | # | Witness | | | |
| | | 1 | | Loan and Security Agreement 2-26-2019 | | |
| | | 2 | | Infinity Capital Management UCC-1 Filed | | |
| | | 3 | | HAS-FTM Sub-Advisory Agreement | | |
| | | 4 | | Amendment 1 to Loan and Securities Agreement between HAS and Infinity - July 23 2019 | | |
| | | 5 | | First Amended Loan and Security Agreement 8-30-2019 | | |
| | | 6 | | HAS-FTM.Infinity.Second Amended Restated. Loan and Security Agmt.w. Promissory Note. exc.12.18.2019 | | |
| | | 7 | | HAS-1 Draw Request | | |
| | | 8 | | HAS-2 Draw Request | | |
| | | 9 | | HAS-3 Draw Request | | |

| EXHIBITS | | In re Infinity Capital Management, Inc.<br>HASelect v. Infinity Health Solutions, et al.<br><br>In re Oliver Andreas Hemmers, et al.<br>HASelect v. Hemmers, et al. | | | BK: Case No. 21-14486-abl<br>ADV: Case No. 22-01109-abl<br><br>BK Case No. 23-15674-abl<br>ADV: Case No. 24-01008-abl | |
|---|---|---|---|---|---|---|
| Offered | Admitted | Identification | | Description of Exhibit | Offers Objections Rulings Exception | Notes |
| | | # | Witness | | | |
| | | 10 | | HAS-4 Draw Request | | |
| | | 11 | | HAS-5 Draw Request | | |
| | | 12 | | HAS-6 Draw Request | | |
| | | 13 | | HAS-7 Draw Request | | |
| | | 14 | | HAS-8 Draw Request | | |
| | | 15 | | HAS-9 Draw Request | | |
| | | 16 | | HAS-10 Draw Request | | |
| | | 17 | | HAS-11 Draw Request | | |
| | | 18 | | HAS-12 Draw Request | | |
| | | 19 | | HAS-13 Draw Request | | |

| EXHIBITS | | In re Infinity Capital Management, Inc.<br>HASelect v. Infinity Health Solutions, et al.<br><br>In re Oliver Andreas Hemmers, et al.<br>HASelect v. Hemmers, et al. | | | BK: Case No. 21-14486-abl<br>ADV: Case No. 22-01109-abl<br><br>BK Case No. 23-15674-abl<br>ADV: Case No. 24-01008-abl | |
|---|---|---|---|---|---|---|
| Offered | Admitted | Identification | | Description of Exhibit | Offers Objections Rulings Exception | Notes |
| | | # | Witness | | | |
| | | 20 | | HAS-14 Draw Request | | |
| | | 21 | | HAS-15 Draw Request | | |
| | | 22 | | HAS-16 Draw Request | | |
| | | 23 | | HAS-17 Draw Request | | |
| | | 24 | | HAS-18 Draw Request | | |
| | | 25 | | HAS-19 Draw Request | | |
| | | 26 | | HAS-20 Draw Request | | |
| | | 27 | | HAS-21 Draw Request | | |
| | | 28 | | HAS-22 Draw Request | | |
| | | 29 | | 20211027 341 Meeting Transcript | | |

| EXHIBITS | | In re Infinity Capital Management, Inc.<br>HASelect v. Infinity Health Solutions, et al.<br><br>In re Oliver Andreas Hemmers, et al.<br>HASelect v. Hemmers, et al. | | | BK: Case No. 21-14486-abl<br>ADV: Case No. 22-01109-abl<br><br>BK Case No. 23-15674-abl<br>ADV: Case No. 24-01008-abl | |
|---|---|---|---|---|---|---|
| Offered | Admitted | Identification | | Description of Exhibit | Offers Objections Rulings Exception | Notes |
| | | # | Witness | | | |
| | | 30 | | 20181121 Email Re_ Follow ups | | |
| | | 31 | | 20181210 Email RE Blanket lien draft | | |
| | | 32 | | 20181212 Email RE_ Blanket lien draft | | |
| | | 33 | | 20190131 Email RE_ Sample Cash Draw Transaction & Support | | |
| | | 34 | | 20190201 Email RE Sample Cash Draw Transaction & Support | | |
| | | 35 | | 20190204 Email re FTM Duties | | |
| | | 36 | | 20190214 Email re loan FTM amounts | | |
| | | 37 | | 20190214 Email Re_ Comments on Loan Agreement and Note | | |
| | | 38 | | 20190226 Email RE_ Urgent Hedgeact update | | |
| | | 39 | | 20190304 Email FW_ My Thoughts on Infinity - Simon | | |

| **EXHIBITS** | | **In re Infinity Capital Management, Inc.**<br>**HASelect v. Infinity Health Solutions, et al.**<br><br>**In re Oliver Andreas Hemmers, et al.**<br>**HASelect v. Hemmers, et al.** | | | **BK: Case No. 21-14486-abl**<br>**ADV: Case No. 22-01109-abl**<br><br>**BK Case No. 23-15674-abl**<br>**ADV: Case No. 24-01008-abl** | |
|---|---|---|---|---|---|---|
| Offered | Admitted | Identification | | Description of Exhibit | Offers Objections Rulings Exception | Notes |
| | | # | Witness | | | |
| | | 40 | | 20200217 Email RE_ Upcoming visit | | |
| | | 41 | | 20200220 Email Re_ Infinity's 5 Focus Areas | | |
| | | 42 | | 20200221 Email Re_ Infinity 2019 audit | | |
| | | 43 | | 20200222 Email Movin' On | | |
| | | 44 | | 20200301 Email re FTM HA Agreement | | |
| | | 45 | | 20200301 Email Re FTM HA Agreement | | |
| | | 46 | | 20200309 Email Re Touching Base | | |
| | | 47 | | 20200324 Email Re Write-up for Infinity | | |
| | | 48 | | 20200325 Email re sociopath | | |
| | | 49 | | 20200326 Email Re Additional receivables information | | |

| EXHIBITS | | In re Infinity Capital Management, Inc.<br>HASelect v. Infinity Health Solutions, et al.<br><br>In re Oliver Andreas Hemmers, et al.<br>HASelect v. Hemmers, et al. | | | BK: Case No. 21-14486-abl<br>ADV: Case No. 22-01109-abl<br><br>BK Case No. 23-15674-abl<br>ADV: Case No. 24-01008-abl | |
|---|---|---|---|---|---|---|
| Offered | Admitted | Identification | | Description of Exhibit | Offers Objections Rulings Exception | Notes |
| | | # | Witness | | | |
| | | 50 | | 20200328 Email RE_ Notes from the call | | |
| | | 51 | | 20200409 Email RE_ NDA and signature page | | |
| | | 52 | | 20200413 Email RE_ NDA and signature page | | |
| | | 53 | | 20200416 Email RE_ Infinity Agree | | |
| | | 54 | | 20200416 Email RE_ NDA and signature page | | |
| | | 55 | | 20200418 Email RE_ Updated proposal for Infinity | | |
| | | 56 | | 20200424 Email RE_ Potential deal for Infinity | | |
| | | 57 | | 20200507 Email RE_ Quick question | | |
| | | 58 | | 20200521 Email Re_ The Deck | | |
| | | 59 | | 20200530 Email re Notice of Default | | |

| EXHIBITS | | In re Infinity Capital Management, Inc.<br>HASelect v. Infinity Health Solutions, et al.<br><br>In re Oliver Andreas Hemmers, et al.<br>HASelect v. Hemmers, et al. | | | BK: Case No. 21-14486-abl<br>ADV: Case No. 22-01109-abl<br><br>BK Case No. 23-15674-abl<br>ADV: Case No. 24-01008-abl | |
|---|---|---|---|---|---|---|
| Offered | Admitted | Identification | | Description of Exhibit | Offers Objections Rulings Exception | Notes |
| | | # | Witness | | | |
| | | 60 | | 20200522 Email RE_ The Deck | | |
| | | 61 | | 20200529 RE_ DD report | | |
| | | 62 | | 20200529 Email RE_ Proposed role of Infinity | | |
| | | 63 | | 20200531 Email FW_ Tecumseh-Infinity Medical Receivables Fund, LP - PPM | | |
| | | 64 | | 20200601 Email re Types of receivables | | |
| | | 65 | | 20200601 Email Re_ entity | | |
| | | 66 | | 20200602 Email re Monthly Report with Spread | | |
| | | 67 | | 20200606 Email to Furkan Baran | | |
| | | 68 | | 20200608 Email re HAselect-FTM Fund Update | | |
| | | 69 | | 20200617 Email RE_ short agenda - How to | | |

| EXHIBITS | | In re Infinity Capital Management, Inc.<br>HASelect v. Infinity Health Solutions, et al.<br><br>In re Oliver Andreas Hemmers, et al.<br>HASelect v. Hemmers, et al. | | | BK: Case No. 21-14486-abl<br>ADV: Case No. 22-01109-abl<br><br>BK Case No. 23-15674-abl<br>ADV: Case No. 24-01008-abl | |
|---|---|---|---|---|---|---|
| Offered | Admitted | Identification | | Description of Exhibit | Offers Objections Rulings Exception | Notes |
| | | # | Witness | | | |
| | | 70 | | 20200618 Email RE_ TI fund and the fee | | |
| | | 71 | | 20200618 Re_ TI fund and the fee (signed SAA) | | |
| | | 72 | | 20200618 Email Re_ TI fund and the fee | | |
| | | 73 | | 20200618 Sub-Advisory Agreement | | |
| | | 74 | | 20200623 Email re Stamp Removal | | |
| | | 75 | | Stat Diagnostics LOP Example (55236_690 - Thompson, Michael - Attorney Lien) | | |
| | | 76 | | 20200626 Email RE_ Purchase Order update | | |
| | | 77 | | 20200709 Email re GPMicro License Agreement | | |
| | | 78 | | 20200709 Email RE_ Bill of Sale | | |
| | | 79 | | 20200711 Email Re_ Thinking outside the box | | |

| EXHIBITS | | In re Infinity Capital Management, Inc.<br>HASelect v. Infinity Health Solutions, et al.<br><br>In re Oliver Andreas Hemmers, et al.<br>HASelect v. Hemmers, et al. | | | BK: Case No. 21-14486-abl<br>ADV: Case No. 22-01109-abl<br><br>BK Case No. 23-15674-abl<br>ADV: Case No. 24-01008-abl | |
|---|---|---|---|---|---|---|
| Offered | Admitted | Identification | | Description of Exhibit | Offers Objections Rulings Exception | Notes |
| | | # | Witness | | | |
| | | 80 | | 20200712 Final re decision | | |
| | | 81 | | 20200713 Email re Second PO for the Tecumseh-Infinity Fund | | |
| | | 82 | | 20200730 Email to Elliot Orsillo re Infinity DD Report | | |
| | | 83 | | 20200810 Email RE_ Some potential good news and update on housekeeping items for the BOA account | | |
| | | 84 | | 20200811 Email re Purchase Order number 3 | | |
| | | 85 | | 20200826 Email re Due Diligence Questions | | |
| | | 86 | | 20200908 Email RE_ Open Balance for Batch 4 | | |
| | | 87 | | 20200919 Email RE_ UCC | | |
| | | 88 | | 20200925 Email RE_ Purchase Order 1-F-9-15 | | |
| | | 89 | | 20200925 Email Re_ Wire | | |

| **EXHIBITS** | | **In re Infinity Capital Management, Inc.**<br>**HASelect v. Infinity Health Solutions, et al.**<br><br>**In re Oliver Andreas Hemmers, et al.**<br>**HASelect v. Hemmers, et al.** | | | | **BK: Case No. 21-14486-abl**<br>**ADV: Case No. 22-01109-abl**<br><br>**BK Case No. 23-15674-abl**<br>**ADV: Case No. 24-01008-abl** |
|---|---|---|---|---|---|---|
| Offered | Admitted | Identification | | Description of Exhibit | Offers Objections Rulings Exception | Notes |
| | | # | Witness | | | |
| | | 90 | | 20200928 Email re Conversation with Infinity | | |
| | | 91 | | 20201001 Email Re BV Sales Receipt #1091 | | |
| | | 92 | | 20201004 Email Re BV Sales Receipt 1095 | | |
| | | 93 | | 20201022 Email Re_ Great news! | | |
| | | 94 | | 20201029 Email RE_ Bank Transfer | | |
| | | 95 | | 20201029 Email FW_ DBA of Infinity Health Connections to Bank of America Account - named Tecumseh-Infinity Medical Receivables Fund | | |
| | | 96 | | 20201103 Email re Documents needed for DBA for Bank | | |
| | | 97 | | 20201123 Email re Infinity Call Update | | |
| | | 98 | | 20210122 Email re December Purchase Orders | | |
| | | 99 | | 20210124 Email RE_ Infinity's FTM collateral | | |

| EXHIBITS | | In re Infinity Capital Management, Inc.<br>HASelect v. Infinity Health Solutions, et al.<br><br>In re Oliver Andreas Hemmers, et al.<br>HASelect v. Hemmers, et al. | | | BK: Case No. 21-14486-abl<br>ADV: Case No. 22-01109-abl<br><br>BK Case No. 23-15674-abl<br>ADV: Case No. 24-01008-abl | |
|---|---|---|---|---|---|---|
| Offered | Admitted | Identification | | Description of Exhibit | Offers Objections Rulings Exception | Notes |
| | | # | Witness | | | |
| | | 100 | | 20210205 Email RE_ Do you have time for a call | | |
| | | 101 | | 20210617 Email re Analysis of HA receivable performance | | |
| | | 102 | | 20210621 Email RE_ Receivable review | | |
| | | 103 | | 20210706 Email RE_ Loan Amount | | |
| | | 104 | | 20210716 Email RE_ Any updates on the HAS negotiations | | |
| | | 105 | | 20210910 Email re RX Portal on Solutions is working | | |
| | | 106 | | 20210803 Email re Flyer preview | | |
| | | 107 | | 20210804 Email RE_ Call today | | |
| | | 108 | | 20210817 Email RE_ Open position report | | |
| | | 109 | | 20210825 Email re Amount outstanding from Infinity to Tecumseh | | |

| EXHIBITS | | In re Infinity Capital Management, Inc.<br>HASelect v. Infinity Health Solutions, et al.<br><br>In re Oliver Andreas Hemmers, et al.<br>HASelect v. Hemmers, et al. | | | BK: Case No. 21-14486-abl<br>ADV: Case No. 22-01109-abl<br><br>BK Case No. 23-15674-abl<br>ADV: Case No. 24-01008-abl | |
|---|---|---|---|---|---|---|
| Offered | Admitted | Identification | | Description of Exhibit | Offers Objections Rulings Exception | Notes |
| | | # | Witness | | | |
| | | 110 | | 20210826 Email RE_ Amount outstanding from Infinity to Tecumseh | | |
| | | 111 | | 20211025 Email re Portal Copyright Changed | | |
| | | 112 | | 20210903 Email Funding Request - September #1 | | |
| | | 113 | | Email re TIF Paid and Purchased by Month | | |
| | | 114 | | 20210913 Email Re Name Replacements | | |
| | | 115 | | 20210914 Email re Move Status | | |
| | | 116 | | 20210916 Email RE_ Client Info Edition 29 | | |
| | | 117 | | 20210923 Email Re Infinity Capital_ Tecumseh Sole Receivables | | |
| | | 118 | | 20210923 Email re Updated Company Roster | | |
| | | 119 | | 20210926 Email re Rx Portal | | |

| EXHIBITS | | In re Infinity Capital Management, Inc.<br>HASelect v. Infinity Health Solutions, et al.<br><br>In re Oliver Andreas Hemmers, et al.<br>HASelect v. Hemmers, et al. | | | BK: Case No. 21-14486-abl<br>ADV: Case No. 22-01109-abl<br><br>BK Case No. 23-15674-abl<br>ADV: Case No. 24-01008-abl | |
|---|---|---|---|---|---|---|
| Offered | Admitted | Identification | | Description of Exhibit | Offers Objections Rulings Exception | Notes |
| | | # | Witness | | | |
| | | 120 | | 20210927 Email FW_ Sty Cole DOB 3_4_1972 | | |
| | | 121 | | 20211006 Email re Corrections to Statements | | |
| | | 122 | | 20211006 Email RE_ Amber Perez | | |
| | | 123 | | 20211009 Email re Modified Template Files | | |
| | | 124 | | 20211011 Email RE_ Lien Reduction_ Keith Smith | | |
| | | 125 | | 20211012 Email re Tecumseh Termination | | |
| | | 126 | | 20211014 Email Re_ Shayvon Chambliss | | |
| | | 127 | | 20211203 Email re infinity health flyer | | |
| | | 128 | | GoDaddy.com Emails re Forwarding | | |
| | | 129 | | TI-FTM Co-Management Agreement | | |

| EXHIBITS | | In re Infinity Capital Management, Inc.<br>HASelect v. Infinity Health Solutions, et al.<br><br>In re Oliver Andreas Hemmers, et al.<br>HASelect v. Hemmers, et al. | | | BK: Case No. 21-14486-abl<br>ADV: Case No. 22-01109-abl<br><br>BK Case No. 23-15674-abl<br>ADV: Case No. 24-01008-abl | |
|---|---|---|---|---|---|---|
| Offered | Admitted | Identification | | Description of Exhibit | Offers Objections Rulings Exception | Notes |
| | | # | Witness | | | |
| | | 130 | | Combined Tecumseh Purchase Orders (A-K) | | |
| | | 131 | | June 26, 2020 Assignment and Bill of Sale | | |
| | | 132 | | July 23, 2020 Assignment and Bill of Sale | | |
| | | 133 | | August 12, 2020 Assignment and Bill of Sale | | |
| | | 134 | | September 10, 2020 Assignment and Bill of Sale | | |
| | | 135 | | September 16, 2020 Assignment and Bill of Sale | | |
| | | 136 | | September 30, 2020 Assignment and Bill of Sale | | |
| | | 137 | | October 4, 2020 Assignment and Bill of Sale | | |
| | | 138 | | NSB 8480 Statements (Mar 2019 - Dec 2020) | | |
| | | 139 | | NSB 6375 Statements (May 2019-Dec 2020) | | |

| **EXHIBITS** | | **In re Infinity Capital Management, Inc.**<br>**HASelect v. Infinity Health Solutions, et al.**<br><br>**In re Oliver Andreas Hemmers, et al.**<br>**HASelect v. Hemmers, et al.** | | | **BK: Case No. 21-14486-abl**<br>**ADV: Case No. 22-01109-abl**<br><br>**BK Case No. 23-15674-abl**<br>**ADV: Case No. 24-01008-abl** | |
|---|---|---|---|---|---|---|
| Offered | Admitted | Identification | | Description of Exhibit | Offers Objections Rulings Exception | Notes |
| | | # | Witness | | | |
| | | 140 | | NSB IHS Statements | | |
| | | 141 | | BOA Account Statements | | |
| | | 142 | | BOA Checks | | |
| | | 143 | | 20200530 HAS Default Notice | | |
| | | 144 | | HSA Demand Letter | | |
| | | 145 | | Patient Lien Example | | |
| | | 146 | | Copy of TIFDumpWithIncome-Final - Landscape | | |
| | | 147 | | 20210128 Email FW Tecumseh-Infinity 4th Qtr | | |
| | | 148 | | 20191114 HealthPlus Imaging Contract | | |
| | | 149 | | 20191008 Email re HPI with Spreadsheet | | |

| **EXHIBITS** | | **In re Infinity Capital Management, Inc.**<br>**HASelect v. Infinity Health Solutions, et al.**<br><br>**In re Oliver Andreas Hemmers, et al.**<br>**HASelect v. Hemmers, et al.** | | | **BK: Case No. 21-14486-abl**<br>**ADV: Case No. 22-01109-abl**<br><br>**BK Case No. 23-15674-abl**<br>**ADV: Case No. 24-01008-abl** | |
|---|---|---|---|---|---|---|
| Offered | Admitted | Identification | | Description of Exhibit | Offers Objections Rulings Exception | Notes |
| | | # | Witness | | | |
| | | 150 | | 20191029 Email re HPI Purchase | | |
| | | 151 | | 20191220 Email re HPI Warning | | |
| | | 152 | | HPI Purchased Accounts | | |
| | | 153 | | HPI Not Purchased Accounts | | |
| | | 154 | | 20210412 HPI Mediation Letter | | |
| | | 155 | | 20210706 Mediation Agreement Signed by HPI and ICM | | |
| | | 156 | | 20200601 Email Re Tecumseh-Infinity Medical Receivables Fund | | |
| | | 157 | | 20200621 Email Re Medical Receivables | | |
| | | 158 | | 20210311 Email RE Financial Statements 2020 | | |
| | | 159 | | Infinity Health Solutions Medical Provider Contracts | | |

| EXHIBITS | | In re Infinity Capital Management, Inc.<br>HASelect v. Infinity Health Solutions, et al.<br><br>In re Oliver Andreas Hemmers, et al.<br>HASelect v. Hemmers, et al. | | | BK: Case No. 21-14486-abl<br>ADV: Case No. 22-01109-abl<br><br>BK Case No. 23-15674-abl<br>ADV: Case No. 24-01008-abl | |
|---|---|---|---|---|---|---|
| Offered | Admitted | Identification | | Description of Exhibit | Offers Objections Rulings Exception | Notes |
| | | # | Witness | | | |
| | | 160 | | Amended Infinity Schedule G (Case 21-14486, Doc 92) | | |
| | | 161 | | Amended Infinity Schedules AB (Case 21-14486, Doc 112) | | |
| | | 162 | | 20210904 Email re HA release | | |
| | | 163 | | 20211012 Email re TIF Paid and Purchased by Month | | |
| | | 164 | | 20231222 Chapter 7 Petition, Case No. 23-15674-abl | | |
| | | 165 | | 20240207 Amended Schedules A/B | | |
| | | 166 | | Nevada SOS Information for Infinity Health Solutions, LLC | | |
| | | 167 | | Nevada SOS Information for A&J Organic Bakery | | |
| | | 168 | | Bankruptcy Questionnaire | | |
| | | 169 | | Income Document Provided to Chapter 7 Trustee | | |

| **EXHIBITS** | | **In re Infinity Capital Management, Inc.**<br>**HASelect v. Infinity Health Solutions, et al.**<br><br>**In re Oliver Andreas Hemmers, et al.**<br>**HASelect v. Hemmers, et al.** | | | **BK: Case No. 21-14486-abl**<br>**ADV: Case No. 22-01109-abl**<br><br>**BK Case No. 23-15674-abl**<br>**ADV: Case No. 24-01008-abl** | |
|---|---|---|---|---|---|---|
| Offered | Admitted | Identification | | Description of Exhibit | Offers Objections Rulings Exception | Notes |
| | | # | Witness | | | |
| | | 170 | | Closing Statement for Sale of 282 Gingerbread Property | | |
| | | 171 | | Statements for NSB Account ending in 1163 | | |
| | | 172 | | Statements for NSB Account ending in 1344 | | |
| | | 173 | | Instagram Screenshots | | |
| | | 174 | | Payroll Allocation Report January 2020 | | |
| | | 175 | | Payroll Allocation Report May 2020 | | |
| | | 176 | | 2019 Personal Property Declaration for Infinity Capital Management | | |
| | | 177 | | 20201012 Email re Piano Purchase | | |
| | | 178 | | Loan History | | |

| EXHIBITS | | In re Infinity Capital Management, Inc.<br>HASelect v. Infinity Health Solutions, et al.<br><br>In re Oliver Andreas Hemmers, et al.<br>HASelect v. Hemmers, et al. | | | BK: Case No. 21-14486-abl<br>ADV: Case No. 22-01109-abl<br><br>BK Case No. 23-15674-abl<br>ADV: Case No. 24-01008-abl | |
|---|---|---|---|---|---|---|
| Offered | Admitted | Identification | | Description of Exhibit | Offers Objections Rulings Exception | Notes |
| | | # | Witness | | | |
| | | 179 | | ICM HAS Draw Reports with Cost Data | | |
| | | 180 | | Combined Cost Data for All HAS Draws | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |